Per Curiam.
 

 This worker’s compensation case concerns the application of the dual employment provisions in MCL 418.372; MSA 17.237(372). Because under the stipulated facts of this case the employee, Kevin Gilbert, was injured in the course of his employment with an employer that did not report Gilbert’s wages to the Internal Revenue Service, the magistrate and the Worker’s Compensation Appellate Commission (wcac) concluded that it was impossible to apportion benefits between Gilbert’s employments and that the “injury employer” was one hundred percent responsible for all benefits based on Gilbert’s
 
 *103
 
 earnings from all employers. This result was reached even though the injury employer paid only about seven percent of Gilbert’s wages.
 

 The facts of this case were stipulated. Gilbert was injured on October 11, 1991, while working in a farm business owned by Ronald L. and Rodney D. Kerber. Farm Bureau Mutual Insurance Company was the Kerbers’ worker’s compensation carrier. At the time of his injury, Gilbert was also employed by the Hexcel Corporation. Gilbert’s average weekly wage from Hexcel was about $875 while his average weekly wage from the Kerbers was about $64.
 

 As part of a wide-ranging amendment of the worker’s compensation act in 1980, our Legislature amended MCL 418.371; MSA 17.237(371) and enacted MCL 418.372; MSA 17.237(372) to address the payment of compensation where injured employees held “dual employment.” 1980 PA 357, effective January 1, 1982. Before the amendment, an injured employee holding more than one job was entitled to benefits based only on the earnings from the job causing the injury.
 
 Finkbiner v ITT Building Service,
 
 189 Mich App 560, 563; 474 NW2d 148 (1991), lv den 439 Mich 970 (1992). Thus, an employee such as Gilbert would be entitled to benefits based on his wages earned in the lower paying employment even though the disability caused by that employment resulted in the loss of wages from a much higher paying job as well.
 

 MCL 418.371; MSA 17.237(371) was amended so that an employee’s rate of benefit is based on the earnings in all the employee’s employments as of the time of the injury. In an obvious effort to avoid hardship to the “injury employer,” our Legislature enacted MCL 418.372; MSA 17.237(372) to apportion the pay
 
 *104
 
 ment of benefits between the “injury employer” and the “noninjury employer.” The Second Injury Fund is responsible for paying the portion of benefits attributed to wages lost from the noninjury employer.
 

 MCL 418.372(l)(b); MSA 17.237(372)(l)(b) provides:
 

 If the employment which caused the personal injury or death provided 80% or less of the employee’s average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee’s weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits.
 

 Under this statute the fund would typically pay about ninety-three percent of the instant employee’s benefits because that is the percentage of the employee’s total wages paid by Hexcel, the noninjury employer.
 

 However, this case is complicated by the stipulated fact that the injury employer did not report plaintiff’s wages to the Internal Revenue Service. MCL 418.372(2); MSA 17.237(372)(2) provides:
 

 For purposes of apportionment under this section, only wages which were reported to the internal revenue service shall be considered, and the reports of wages to the internal revenue service are conclusive for the purpose of apportionment under this section.
 

 The effect of this language is at the heart of this case.
 

 The fund argues that because the Kerbers (the injury employer) reported, none of Gilbert’s earnings to the IRS, there is nothing to apportion and it follows
 
 *105
 
 that the injury employer is one hundred percent responsible for Gilbert’s worker’s compensation benefits. The fund further argues that because the amount of those benefits is governed by MCL 418.371; MSA 17.237(371), and that statute bases benefits on all Gilbert’s earnings and does not depend on whether earnings are reported to the IRS, the Kerbers are responsible for benefits based on a total average weekly wage of about $940 even though they paid Gilbert, only $64 a week. The magistrate and the wcac agreed with the fund.
 

 Plaintiffs argue that the fund should be responsible for one hundred percent of Gilbert’s worker’s compensation benefits. According to plaintiffs, a strict reading of the plain language of § 372 is that the unreported income paid by the Kerbers is not to be considered, which makes Gilbert’s earnings from Hexcel to be one hundred percent of the income to be apportioned. Because Hexcel is the nonirijury employer and the fund is responsible for earnings attributable to the noninjury employer, the fund is responsible for one hundred percent of Gilbert’s benefits.
 

 Neither party’s position is readily acceptable. A fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting a provision.
 
 Farrington v Total Petroleum, Inc,
 
 442 Mich 201, 212; 501 NW2d 76 (1993). However, a statute should be construed to avoid inflicting hardship or reaching an unjust or unreasonable result.
 
 Rogers v Detroit,
 
 457 Mich 125, 157; 579 NW2d 840 (1998), citing
 
 Franges v General Motors Corp,
 
 404 Mich 590, 612; 274 NW2d 392 (1979). Statutory language should be interpreted reasonably, considering the purpose of the act.
 
 Gilman v Northwest Airlines, Inc,
 
 230 Mich
 
 *106
 
 App 293, 295; 583 NW2d 536 (1998). Literal construction of a statute that would produce an absurd or unjust result that is clearly inconsistent with the purposes and policies of the statute should be avoided.
 
 Livonia v Goretski Constr Co,
 
 229 Mich App 279, 289-290; 581 NW2d 761 (1998), lv den 459 Mich 929 (1998). For example, in
 
 Salas v Clements,
 
 399 Mich 103; 247 NW2d 889 (1976), the plaintiff’s failure to comply with the “name and retain” provision of the dramshop act, MCL 436.22; MSA 18.993, did not require dismissal of the dramshop suit as a literal reading of the provision would suggest, because the plaintiffs did not know the identity of the alleged intoxicated person that had to be named and retained. The
 
 Salas
 
 Court recognized that departure from the literal construction of a statute is justified when such a construction produces an absurd and unjust result that is clearly inconsistent with the purposes and policies of the statute in question. 399 Mich App 109.
 

 Here, one obvious purpose of subsection 372(2) is to protect the fund by avoiding possible collusion and fraud by an employee and employer. An employee and a noninjury employer could fabricate an inflated wage, with the result that the employee’s worker’s compensation benefits would be greater than they should be. The employee would obviously be benefited. The noninjury employer would not be harmed, because the fund rather than that employer would be liable for the benefits attributable to that employer. Other possibilities of fraud are conceivable but not nearly as likely as the one just cited. In most cases the injury employer would not inflate wages because that employer would be liable for increased benefits,
 
 *107
 
 and in most cases it would be against the employee’s interests to claim wages less than he was actually paid. Subsection 372(2) also simplifies trial proofs.
 

 Given that the facts in the instant case were stipulated and there was no adversarial trial, we can find no benefit in applying subsection 372(2). The purposes of § 372 are not advanced by applying subsection 372(2). Rather, the underlying purpose of § 372 is violated by applying subsection 372(2) in this case. Our Legislature intended the payment of worker’s compensation benefits to be apportioned among employers in a dual employment situation. Contrary to that intent, the magistrate, the wcac, and both parties reach results that require either the fund or the Kerbers to pay one hundred percent of the employee’s worker’s compensation benefits. And yet it is stipulated that the noninjury employer paid ninety-three percent of the employee’s wages while the injury employer paid seven percent of the employee’s wages.
 

 The result reached below and the results advocated by the parties are absurd or illogical and clearly inconsistent with the purposes and policies expressed in § 372. The facts are not in dispute. The injured employee was engaged in dual employment and his wages from both employments are known. There is no risk of fraud or collusion in this case. It is contrary to the purpose of § 372 for either the Kerbers or the fund to be responsible for one hundred percent of the employee’s worker’s compensation benefits. Applying subsection 372(2) to the stipulated facts yields an absurd result. Given the circumstances of this case, we cannot construe § 372 to prohibit consideration of the unreported wages paid by the injury employer.
 
 *108
 
 Those wages are to be considered in apportioning benefits as well as in determining the employee’s total wages.
 

 The decision of the WCAC is reversed and this matter is remanded for apportionment of compensation benefits consistent with this opinion. We do not retain jurisdiction. No costs are to be awarded because neither party prevailed in full.