HOUGHTON LAKE AREA TOURISM & CONVENTION BUREAU v
WOOD

Docket No. 232031. Submitted September 5, 2002, at Lansing. Decided
January 21, 2003, at 9:00 A.M.

The Houghton Lake Area Tourism & Convention Bureau brought an
action in the 83rd District Court against Suzette Wood, owner of
the Rose-O-Day Motel, to recover room assessments that the defen-
dant failed to pay. The defendant claimed that the assessments,
which fund the plaintiff's marketing program established under the
Community Convention or Tourism Marketing Act, MCL 141.871
*et seq.*, were not applicable to her motel. She alleged that, although
the motel qualified for the assessment when the program began
because it contained ten or more rooms used in the business of
providing dwelling, lodging, or sleeping to transient guests, those
who stay fewer than thirty consecutive days, she is now using less
than ten rooms for transient guests and therefore is no longer sub-
ject to the assessments. The district court, Francis L. Walsh, J.,
denied the defendant's motion for summary disposition and granted
the plaintiff's motion for summary disposition, finding that the rele-
vant statute did not allow someone who was subject to the assess-
ment when the program began to reduce the number of rooms
rented to transient guests and stop paying the assessments. The
court further found that, because the act provided that owners with
motels that did not qualify as transient facilities because they
rented less than ten rooms to transient guests could become volun-
tary members subject to the assessments and that such voluntary
members could not withdraw thereafter, it was reasonable to
assume that the Legislature also intended that members such as the
defendant who were required to be members could not withdraw.
The defendant appealed to the Roscommon Circuit Court, Ronald
M. Bergeron, J., which affirmed the district court's decision. The
defendant appealed by leave granted.

The Court of Appeals *held*:

1. The defendant's motel no longer meets the statutory definition
of a transient facility. It is insufficient that the building has ten
rooms and that the building is used in the business of providing
lodging to transient guests. There must be at least ten rooms that

are used for that purpose. In this case, the defendant used only nine rooms for that purpose and used a tenth room to rent for periods longer than thirty days.

2. If the hotel no longer meets the definition of a transient facility, it is not subject to the assessments, regardless of whether it met the definition when the assessments began.

3. The Legislature did not include in the act a provision making mandatory membership in the plaintiff bureau permanent.

4. A mandatory member's facility that no longer meets the definition of a transient facility is no longer subject to the assessment. The defendant need not pay the assessment if she is using fewer than ten rooms for transient guests.

Reversed.

1. INNKEEPERS — TRANSIENT FACILITIES — TRANSIENT GUESTS.

A bureau that is a nonprofit corporation that promotes convention business or tourism within the state may establish a marketing program and an assessment district pursuant to the Community Convention or Tourism Marketing Act to promote convention business or tourism within the district; the owners of transient facilities within a district are mandatory members who are liable for such assessments (MCL 141.871 et seq.).

2. INNKEEPERS — TRANSIENT FACILITIES — TRANSIENT GUESTS.

The Community Convention or Tourism Marketing Act defines "transient guest" as one whose stay at a transient facility is fewer than thirty consecutive days; the act defines a "transient facility" as a building or combination of buildings that is under common ownership, operation, or management and that contains ten or more rooms used in the business of providing dwelling, lodging, or sleeping to transient guests, whether or not membership is required for the use of the rooms; it is not sufficient that the building have ten rooms and that the building is used in the business of providing lodging to transient guests; what is required is that there must be at least ten rooms that are used for that purpose (MCL 141.872[m], [n]).

3. INNKEEPERS — TRANSIENT FACILITIES — TRANSIENT GUESTS.

A facility that pursuant to the Community Convention or Tourism Marketing Act was a "transient facility," whose owner, is a mandatory member of a bureau establishing a marketing program and an assessment district under the act, is no longer subject to such assessment where the facility no longer meets the act's definition of a transient facility (MCL 141.871 et seq.).

*Hess & Hess, P.C.* (by *Troy B. Daniel*), for the plaintiff.

*Arvid Perrin* for the defendant.

Before: MARKEY, P.J., and CAVANAGH and R. P. GRIFFIN*, JJ.

PER CURIAM. Suzette Wood (hereafter defendant) appeals by leave granted the circuit court's order affirming the district court's order that granted summary disposition in favor of plaintiff Houghton Lake Area Tourism & Convention Bureau and remanded the matter to the district court for proceedings consistent with the provisions of the district court's order. We reverse.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff bureau is a nonprofit corporation that promotes convention business or tourism within the Houghton Lake area. MCL 141.872(e). According to the parties, pursuant to the powers conferred upon it by the Community Convention or Tourism Marketing Act, MCL 141.871 *et seq.*, plaintiff decided to establish a marketing program and assessment district to establish a means of promoting convention business or tourism within the proposed district. To this end, plaintiff initiated a referendum among the owners of transient facilities located within the proposed assessment district. Each owner was allotted votes equivalent to the number of rooms in the owner's facility. MCL 141.873, MCL 141.873a, MCL 141.874. A

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

transient facility is a "building or combination of buildings under common ownership, operation, or management that contains 10 or more rooms used in the business of providing dwelling, lodging, or sleeping to transient guests, whether or not membership is required for the use of the rooms." MCL 141.872(m). Transient guests are those who stay fewer than thirty consecutive days. MCL 141.872(n). The owners of transient facilities approved the marketing plan and assessment district. Thereafter, the marketing plan and assessment district became effective, and the owners of the transient facilities within the district became liable for an assessment of up to two percent of their gross occupancy charges. MCL 141.873a, MCL 141.873.

According to the parties, at the time of the referendum, the owners of the Rose-O-Day Motel, Elmer and Gladys Sikkema, represented to plaintiff bureau that their motel had ten rooms. Accordingly, they cast ten votes against the marketing plan and assessment district. The parties also represented that the Sikkemas paid the assessment from October 1994 until September 1996. They transferred operation of the motel to Larry Wilding in October 1996 under a lease with an option to purchase. Wilding refused to pay the assessment. Plaintiff then filed suit against Wilding in district court. Wilding responded that he was not subject to the assessment because he only rented nine rooms. Wilding's lease expired during the pendency of the district court action. The Sikkemas then leased the motel to defendant and Tim O'Neil with an option to purchase in August 1998. Defendant eventually purchased the motel. Thereafter, the suit against Wilding was dismissed.

In January 1999, plaintiff commenced the instant suit against defendant and O'Neil after plaintiff did not receive any assessment payments. O'Neil was subsequently dismissed by stipulation. Both parties thereafter moved for summary disposition. Defendant asserted that she did not operate a transient facility within the meaning of the act because she no longer used ten rooms for transient guests. According to Wilding, he only rented nine rooms to guests when he operated the motel. Defendant said that when she entered the lease, there were nine motel rooms, a living quarters, an upstairs apartment, and an uninhabitable "night-manager's efficiency apartment" with direct access to the motel office. Defendant said the efficiency apartment was then being used for storage, but she furnished and restored it. On a diagram, defendant included ten units and numbered the efficiency apartment as unit six.

Defendant rented unit six to a local pharmacist from September 11, 1998, to October 10, 1998, and to a different renter from October 10, 1998, to October 1, 1999. In an October 1999 affidavit, defendant testified that she was then converting it to an office for her real estate business. According to defendant, she had resided in the living quarters since her lease began in August 1998. She said the upstairs apartment was always rented on a nine-month lease; she leased the apartment to a renter from August 23, 1998, to June 10, 1999.

Defendant noted that her lease with the Sikkemas expressly referred to nine motel rooms: a provision stated that the furniture in all nine motel rooms was included in the lease. She acknowledged that the motel had the capacity to rent ten rooms to transient

guests but claimed it was not practicable and denied that the motel was presently configured to accommodate transient guests in ten rooms.

In January 2000, the district court denied defendant's motion for summary disposition. In its opinion, the district court held that because the motel was subject to assessment when the marketing program began, it could not later withdraw, even if it had only nine rooms available for transient guests when defendant owned it. The court found that the statute's purpose, to promote tourism, would be frustrated if an owner could reduce the transient guest rooms to nine and stop paying the assessment. Further, the court found that because voluntary members could not leave under MCL 141.879(2), it was reasonable to assume the Legislature also intended that mandatory members could not leave. In a second opinion, the district court rejected defendant's argument that the dismissal of plaintiff's lawsuit against Wilding had a res judicata or collateral estoppel effect or that the second dismissal rule prevented the present suit.

Because the district court overlooked plaintiff's summary disposition motion when deciding defendant's motion, the district court subsequently held a hearing and granted plaintiff's motion. The court again held that an owner cannot escape the assessment by reducing the number of rooms for transient guests; the court restated its earlier reasoning. The district court's order required defendant to submit to plaintiff's accountant within thirty days after entry of the order a list of her aggregate room charges for each month from August 18, 1998, to the date of the order and thereafter submit to the accountant a copy

of her state use tax returns within thirty days after the close of each calendar quarter.

Defendant appealed to the circuit court, which affirmed the district court's decision. The circuit court indicated that it was persuaded by the same arguments set forth in the district court's opinions. This Court granted leave to appeal the circuit court's decision.

## II. ANALYSIS

On appeal, defendant first argues that her motel does not fall within the statutory definition of "transient facility" because the motel does not have ten or more rooms used in the business of lodging transient guests. We conclude that defendant's motel does not meet the definition of a transient facility.

This Court reviews summary disposition decisions de novo. *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998); *Hubscher & Son, Inc v Storey*, 228 Mich App 478, 480; 578 NW2d 701 (1998). This Court also reviews de novo issues of statutory interpretation. *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

The district and circuit courts did not indicate under which subsection of MCR 2.116(C) summary disposition was granted. Plaintiff's motion cited both MCR 2.116(C)(9), failure to state a valid defense, and (10), no genuine issue regarding any material fact. Because the district court considered documents outside the pleadings when it granted plaintiff summary disposition, *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999), this Court

should analyze the decision as a grant of summary disposition under MCR 2.116(C)(10), see *Gibson v Neelis*, 227 Mich App 187, 190; 575 NW2d 313 (1997).

In the lower courts and on appeal, defendant has not challenged the assertion that the Rose-O-Day Motel had ten rooms for transient guests when the marketing program began in 1994. Further, plaintiff has not claimed that defendant actually rents ten units to transient guests. The issue is solely one of statutory interpretation.

When interpreting a statute, this Court's goal must be to give effect to the Legislature's intent. *In re MCI*, *supra* at 411; *Barr v Mt Brighton, Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). This Court may not impose its own policy choices when interpreting a statute. *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999); *Stabley v Huron-Clinton Metro Park Auth*, 228 Mich App 363, 370; 579 NW2d 374 (1998). If the statute defines a term, that definition must control. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). This Court should give undefined words their plain and ordinary meaning. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998); *Tryc, supra* at 135-136. If the statute is unambiguous, this Court must not engage in judicial construction. *In re MCI, supra* at 411. This Court must presume the Legislature intended the meaning it expressed. *Decker v Flood*, 248 Mich App 75, 82; 638 NW2d 163 (2001).

This Court must not determine whether there is a "more proper way" the Legislature should have chosen, but rather must determine what the Legislature actually intended. *Tyler v Livonia Pub Schools*, 459 Mich 382, 392 n 10; 590 NW2d 560 (1999); *Koontz v*

*Ameritech Services, Inc*, 239 Mich App 34, 47; 607 NW2d 395 (1999), rev'd on other grounds 466 Mich 304; 645 NW2d 34 (2002). This Court must not consider the wisdom of the Legislature's decisions regarding statutory provisions. *Levy v Martin*, 463 Mich 478, 487; 620 NW2d 292 (2001); *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 612-613; 575 NW2d 751 (1998). Further, this Court should generally not speculate about the Legislature's intent beyond the words actually used in the statute. *In re MCI, supra* at 414-415; *Michigan State Bldg & Constr Trades Council v Director, Dep't of Labor*, 241 Mich App 406, 411; 616 NW2d 697 (2000). Specifically, this Court should assume that an omission was intentional. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 170; 610 NW2d 613 (2000). However, judicial construction is appropriate when reasonable persons could interpret a statue differently. *In re MCI, supra* at 411; *Terzano v Wayne Co*, 216 Mich App 522, 527; 549 NW2d 606 (1996). This Court must determine the reasonable construction that best effects the Legislature's intent. *Frankenmuth Mut Ins, supra*; *Terzano, supra*.

Here, the first issue that we must address is whether defendant's motel meets the definition of "transient facility." A transient facility is defined as "a building or combination of buildings under common ownership, operation, or management that contains 10 or more rooms used in the business of providing dwelling, lodging, or sleeping to transient guests, whether or not membership is required for the use of the rooms." MCL 141.872(m). A "transient guest" is a

person who occupies a room for fewer than thirty consecutive days. MCL 141.872(n).

Defendant provided evidence that only nine rooms were used for transient guests while she operated the motel. She claimed she used the living quarters as a permanent home, and the upstairs apartment was rented on a lease for longer than thirty days. According to the leases defendant produced, two persons rented the "efficiency apartment," each for more than thirty days; therefore, it was not rented to transient guests. The question therefore is what the Legislature intended by the phrase "rooms used in the business" in MCL 141.872(m). In our opinion, reasonable persons could interpret the term somewhat differently; therefore, limited judicial construction is appropriate. *In re MCI, supra.*

Plaintiff argues on appeal that the statute does not require that ten rooms be used for transient guests but rather that "ten rooms exist that can be rented." To support this argument, plaintiff cites the definition of the word "room" in MCL 141.872(k). "Room" is defined as

> a room or other space provided for sleeping that can be rented independently, including the furnishings and other accessories in the room. Room includes, but is not limited to, a condominium or time-sharing unit that, pursuant to a management agreement, may be used to provide dwelling, lodging, or sleeping quarters for a transient guest. [MCL 141.872(k).]

Plaintiff argues that the terms "can be" and "may be" mean it need only be possible to rent ten rooms to transient guests.

However, the term "can be" relates to the ability of a room to be rented as an independent unit, not the

ability to be rented specifically to transient guests. See MCL 141.872(k). The term "may be" refers to whether the condominium or time-share management agreement allows the room to be used for transient guests, not whether it is physically possible to do so. *Id.* The transient guest requirement is addressed specifically in MCL 141.872(m) only. Thus, in our opinion, the critical issue is not whether the rooms "can be" or "may be" used for transient guests but whether they are "used in the business" of providing lodging to transient guests. See MCL 141.872(m).

The statute does not define the term "used in the business." Defendant cites several cases in which a federal court interpreted the word "used," e.g., *Perry v Comm'r of Internal Revenue Service*, 91 F3d 82, 85 (CA 9, 1996), and *Atlanta Athletic Club v Comm'r of Internal Revenue Service*, 980 F2d 1409, 1413-1414 (CA 11, 1993), and the term "used in the business," *Prestige Cas Co v Michigan Mut Ins Co*, 859 F Supp 1058, 1068-1069 (ED Mich, 1994), rev'd 99 F3d 1340 (CA 6, 1996). This Court also has discussed the term "used in the business" in relation to insurance coverage. See, e.g., *Engle v Zurich-American Ins Group*, 216 Mich App 482, 484-485; 549 NW2d 589 (1996), remanded 455 Mich 866 (1997). These cases, however, do not provide a general definition for the terms "used" and "used in the business." Further, we have found no Michigan cases providing a general definition.

This Court may consult a dictionary when interpreting a statutory term. *People v Gould*, 225 Mich App 79, 84; 570 NW2d 140 (1997). The verb "use" means to "make use of, put to use, operate, employ . . . ." *Random House Webster's College Dictionary*

(1999). The word "used" indicates that the rooms must actually be employed to provide lodging for transient guests; it is insufficient that they are simply capable of housing transient guests. Any rented dwelling could be physically capable of housing transient guests, including an apartment used only by long-term tenants. An interpretation that broad would render meaningless the requirement that the rooms be used for transient guests. On the other hand, the phrase "used in the business" should not be interpreted to mean the rooms must actually be rented at a given time. Rather, it should be interpreted to require that the owner generally make the rooms available to transient guests. Further, the structure of the sentence in MCL 141.872(m) indicates that it is insufficient that the building has ten rooms and the building is used in the business of providing lodging to transient guests; there must be at least ten rooms that are used for that purpose.

Arguably, this interpretation would allow some owners to avoid the assessment by falsely claiming that only nine rooms are used for transient guests. The risk of misrepresentation increases when a facility has additional rooms that could be used by transient guests. The Legislature, however, chose to exempt all facilities that do not use ten or more rooms for transient guests. This Court cannot simply decide that was unwise and ignore the statutory definition. *Levy, supra.* Further, as defendant suggests, the courts should be able to determine when a room is "used in the business" of providing lodging to transient guests. In the present case, this would not be difficult to determine because defendant claims the "efficiency apartment" was subject to a long-term

lease, and plaintiff does not dispute this. We conclude that defendant's facility no longer meets the definition of a transient facility.

Further, although plaintiff asserts on appeal that it need only be possible to rent the rooms to transient guests, this conflicts with plaintiff's earlier interpretation of the statute. During discovery, plaintiff explained that another facility, the Motel Grand, was removed from plaintiff's assessment list because the owner showed the tenth room had been rented to one person since before the marketing program began. In our opinion, that indicates even plaintiff acknowledged that it is insufficient for a motel to simply have ten rooms capable of being rented to transient guests.

Moreover, this was not the argument the district and circuit courts adopted. The courts did not decide whether defendant's motel contained ten rooms used in the business of providing transient lodging. The courts instead held that whether the motel had nine or ten rooms when defendant began leasing it was irrelevant because a facility could not withdraw from the marketing program. The courts cited two reasons for this decision: (1) the statute's purpose, to promote tourism, would be frustrated if an owner could reduce the transient guest rooms to nine and stop paying the assessment; and (2) because voluntary members could not withdraw under MCL 141.879(2), it was reasonable to presume the Legislature also intended that mandatory members could not leave.

The district court explained that it believed it would frustrate the statute's purpose to promote tour-

ism[1] if a motel owner could reduce the number of rooms to below ten and refuse to pay the assessment. Defendant, however, argues that the Legislature must have considered that possibility when it decided to include the exception for facilities with fewer than ten rooms used for transient guests. In our opinion, the Legislature's general purpose to promote convention business and tourism would be slightly deterred but not defeated if some owners of small facilities reduced the number of their rooms available to transient guests. The Legislature must have had a reason for exempting facilities with fewer than ten rooms used for transient guests, despite the risk that some owners would reduce their available rooms before the marketing program even began and thus escape assessment.

Defendant claims the exception was added after the first legislative analysis of the tourism bill, 1980 PA 395. The first analysis did not refer to the exception and noted that one argument against the bill was that it gave owners of large facilities an advantage over those with just a few rooms. House Legislative Analysis, HB 6014, September 11, 1980. Plaintiff argues that defendant fails to cite any authority regarding why this Court is bound by legislative history. This Court has said that a legislative bill analysis may have some probative value when interpreting an ambiguous statute. See, e.g., *Seaton v Wayne Co Prosecutor (On Second Remand)*, 233 Mich App 313, 321 n 3; 590 NW2d 598 (1998). However, this Court questioned that in dicta in *Detroit Edison Co v Celadon*

---

[1] We note that the district court correctly identified the statute's purpose: to promote convention business and tourism in the area. See MCL 141.872(g).

*Trucking Co*, 248 Mich App 118, 124 n 15; 638 NW2d 169 (2001) Further, our Supreme Court has stated that a legislative analysis is "a feeble indicator of legislative intent" because it is not an official statement of intent and may not even represent the views of a single legislator. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587 & n 7; 624 NW2d 180 (2001). It is usually not a persuasive measure of the statute's intended meaning. *Id.*

In the present case, the legislative analysis is slightly useful to understanding how the exception for facilities with less than ten rooms was included in the act. Even in the analysis, however, no evidence exists regarding why the Legislature included the exception or how concerned the Legislature was about owners who might reduce their available rooms simply to take advantage of the exception. The Legislature likely wanted to protect small establishments that would not benefit from convention business and would benefit little from increased tourism, yet would also have little say in the decision whether to adopt a program because the number of votes allotted to owners was based on the number of rooms used for transient guests. Facilities that mostly catered to long-term residents and had few transient guests would also benefit little from the marketing program. The owners of these facilities were not compelled to join but were given the option to join if they desired. MCL 141.879(1). It is unclear why the Legislature chose ten rooms as the cutoff, or whether the Legislature was concerned about owners with ten or more rooms who would stop using a few rooms and leave the program.

The Legislature did not address that concern in the statute with any specific provision. This Court cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose. See *Levy, supra* at 487. However, when interpreting an ambiguous statute, this Court must determine the reasonable construction that best effects the Legislature's intent. *Frankenmuth Mut Ins, supra.* Further, this Court generally should not speculate about the Legislature intent's beyond the words actually used in the statute, *In re MCI, supra* at 414-415, and should assume that any omission was intentional, *Cherry Growers, Inc, supra* at 170.

Therefore, this Court hesitates to interpret the statute as preventing owners from leaving the program simply on the basis of the argument that to do otherwise would go against the statute's general purpose to promote convention business and tourism. That reason alone is insufficient. On the other hand, the general purpose has some weight in interpreting the statute and should be considered in the final analysis whether the statute prohibits mandatory members from escaping assessment by reducing their rooms.

Defendant also argues that it would be an absurd result if she had to pay the assessment when the owner of an identical motel built today would not have to do so because it did not meet the definition of a transient facility. Defendant contends that this Court must avoid absurd or unreasonable results, citing *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998), and *Thrifty Rent-A-Car Systems, Inc v Dep't of Transportation*, 236 Mich App 674, 678; 601 NW2d 420 (1999). In *Thrifty, supra,* this Court stated that a literal interpretation of a stat-

ute is not appropriate if it leads to absurd or unreasonable results. However, in *Gilbert v Second Injury Fund*, 463 Mich 866, 867; 616 NW2d 161 (2000), the Supreme Court clarified that application of the absurd result rule is appropriate only when attempting to determine the Legislature's intent regarding an ambiguous statute; it cannot defeat a statute's clear meaning.

The statute in the present case is somewhat ambiguous; therefore, this Court may consider to a limited degree whether a result would be absurd when determining the Legislature's intent. It does seem unfair that a new motel with the same room configuration could escape the assessment while defendant could not. However, that result would have some benefit because it would relieve plaintiff from the effort necessitated by letting facilities in and out of the program and checking each time to ensure the rooms previously used for transient guests were being used for other purposes. It is not an absurd result for those facilities already subject to the assessment to remain so. The question whether that is what the Legislature actually intended is addressed below.

The second issue we must address is whether defendant must pay the assessment regardless of the number of rooms presently being used for transient guests because the motel met the definition of a transient facility when the marketing program was first approved. We conclude that if defendant's motel no longer meets the definition of a transient facility, it is not subject to the assessment, regardless of whether it met the definition when the assessment began.

The Legislature expressly provided that motel owners with fewer than ten rooms who join the marketing

program voluntarily must remain subject to assessment unless the assessment is discontinued. MCL 141.879(2). The provision expressly applies to those who become members voluntarily; it makes no reference to mandatory members. MCL 141.879(1) and (2).

The circuit court noted that the provision "certainly perhaps did not literally apply" to owners who did not voluntarily join, but said the provision indicated that once a facility was subject to the assessment it remained subject to it unless the bureau's board of directors decided it should be excluded or the marketing program ended. The district court also found the provision persuasive and said that, in light of that provision, it was reasonable to assume that the Legislature intended all facilities subject to the assessment to remain so unless the program was discontinued.

Defendant argues first that the lower courts' interpretation is incorrect because the statute, as originally enacted, did not include the voluntary membership provision. The Legislature added the provision four years later. 1984 PA 59. However, in our opinion, this does not prevent the voluntary membership provision, MCL 141.879, from being viewed as evidence that the Legislature intended, and perhaps assumed, that mandatory membership was also permanent.

However, defendant also asserts that the Metro Detroit Convention & Visitors Bureau, acting under a similar act authorizing marketing programs for large counties, MCL 141.881 *et seq.*, allows members to leave if they fall below the cutoff number of rooms, which under that act is thirty-five rooms, MCL 141.882(1). Defendant submitted as an exhibit an exemption form for the Detroit bureau that allows an owner to seek an exemption by attesting that the

facility is "not presently subject to the room assessment for the reason that it does not contain [thirty-five] or more rooms used in the business of providing" lodging for transient guests. Defendant argues that the Legislature was aware of the Detroit bureau's practice when it amended MCL 141.871 *et seq.* in 1984, yet the Legislature did not clarify that membership in the tourism programs was actually permanent. It seems likely at least some of those closely involved in the amendment of MCL 141.871 *et seq.* were aware of the Detroit bureau's exemption procedure. On the other hand, it could also be argued that they believed that the Detroit bureau chose to allow the exemptions but was not required to do so. Further, the exemption form does not clearly indicate whether it applies to existing facilities that reduce their rooms or only to new facilities that meet the exemption requirements.

Defendant further asserts that the Legislature considered the definition of "transient facility" when amending the statute, yet still did not address the issue whether membership was permanent. The legislative bill analysis notes the definition of "transient facility" would be expanded to include multiple buildings with at least ten rooms for transient guests. Senate Legislative Analysis, SB 269, October 12, 1983. The second analysis mentions the voluntary provision, Senate Legislative Analysis, SB 269, April 26, 1984; however, it sheds no light on whether the Legislature believed mandatory membership was already permanent. Neither analysis mentions any consideration of whether mandatory membership was permanent.

Defendant also submitted as an exhibit a letter sent to a senator from the president of a motel in which the president opined that the definition of transient facilities should exempt those with fewer than nineteen rooms because convention attendees would be no more than ten percent of their guests. However, the letter is weak evidence that the Legislature even seriously considered the definition much less the issue whether membership was permanent. There is also no evidence regarding whether the Legislature considered the issue when it amended portions of MCL 141.871 *et seq.* in 1989 and 1993. See 1989 PA 245; 1993 PA 224; House Legislative Analysis, HB 4460, April 27, 1993.

Defendant argues next that the present statute, MCL 141.871 *et seq.*, is in pari materia with two other statutes relating to conventions and tourism, MCL 141.881 *et seq.*, which authorizes marketing programs for large counties, and MCL 141.891 *et seq.*, which authorizes regional programs covering several counties. Defendant notes that only MCL 141.871 *et seq.* and MCL 141.891 *et seq.* contain provisions for voluntary membership, MCL 141.879 and MCL 141.899. Defendant argues that it would be unreasonable for those provisions to make involuntary membership permanent under MCL 141.871 *et seq.* and MCL 141.891 *et seq.*, while it is not permanent under MCL 141.881 *et seq.*, because that act has no voluntary membership provision at all.

If two or more statutes arguably relate to the same subject or have the same purpose, they are considered in pari materia and must be read together to determine legislative intent. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998); *State Treasurer v*

*Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), quoting *Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965), cert den 382 US 107 (1965). The purpose of the in pari materia rule is simply to assist this Court in interpreting the Legislature's intent. *Webb, supra*. Statutes relate to the same subject if they relate to the same person or thing or the same class of persons or things. *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 427; 565 NW2d 844 (1997), quoting *Detroit, supra* at 558. Statutes need not be enacted at the same time or even refer to each other to be read in pari materia. *State Treasurer, supra; Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 279; 597 NW2d 235 (1999).

Here, the statutes defendant cites, MCL 141.881 *et seq.* and MCL 141.891 *et seq*, relate to the promotion of convention business and tourism, as does the statute at issue in this case, MCL 141.871 *et seq.* Therefore, they relate to the same general subject. However, each provides slightly different provisions applicable to different types of tourism and convention bureaus. For example, MCL 141.881 *et seq.* applies only to transient facilities with at least thirty-five rooms, unlike MCL 141.871 *et seq.* MCL 141.882(I); MCL 141.882(m). Defendant argues on appeal that it would be unreasonable for two statutes to make membership permanent while one does not. In our opinion, the in pari materia rule does not suggest that similar statutes must have the same provisions. Nonetheless, it seems unlikely that the Legislature would have intended that membership be permanent in some tourism marketing programs and not in

others when the programs have otherwise similar structures.

Defendant's argument, however, is slightly misleading because plaintiff does not claim that the voluntary membership provision itself actually makes mandatory membership permanent. Plaintiff instead asserts that the provision is evidence that the Legislature intended it to be permanent. It could be argued that the Legislature intended all membership to be permanent, regardless of whether voluntary membership was permitted under a particular tourism act and regardless of whether all bureaus enforced permanent membership.

Defendant also argues that the assessment is the equivalent of a tax and that the statute therefore should be interpreted like a tax statute. This Court resolves ambiguities in tax statutes in the taxpayer's favor. *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994), cert den 513 US 1016 (1994). The Legislature must expressly authorize a tax; this Court cannot infer the existence of a tax. *Id.*

However, defendant does not cite any authority to support her theory that an assessment by a nonprofit corporation should be interpreted to be like a tax. Plaintiff notes that, unlike a tax, the assessment can be passed on to guests under MCL 141.875(1). On the other hand, the assessment is a government-authorized collection of money used for the common good. According to the analysis of 1980 PA 395, those opposed to the bill saw the assessment as a tax on motel guests; they were concerned about "taxation without representation." The courts' concerns about applying a tax statute too broadly, see, e.g., *Michigan*

*Bell Tel, supra* at 477, apply as well to the assessment statute in the present case. Although this Court need not strictly interpret the assessment statute in the motel's favor, the analogy to tax statutes does support a careful reading of the statutes to avoid applying the assessment statute too broadly.

Defendant argues that this Court should also con- sider common-law contract principles. When interpreting ambiguous provisions, it is appropriate for this Court to consider the common law. *J&L Investment Co, LLC v Dep't of Natural Resources,* 233 Mich App 544, 549; 593 NW2d 196 (1999). The Legislature is presumed to be familiar with the common law, and established rules of common law will not be abolished by implication. *Id.*; *Nation v W D E Electric Co,* 454 Mich 489, 494; 563 NW2d 233 (1997). Therefore, this Court will interpret an ambiguous provision so that it makes the least change in the common law. *B&B Investment Group v Gitler,* 229 Mich App 1, 7; 581 NW2d 17 (1998).

Defendant correctly states that a contract requires an offer and acceptance, *J&L Investment, supra* at 552, and mutual assent to be bound, *Rood v Gen Dynamics Corp,* 444 Mich 107, 118; 507 NW2d 591 (1993), which is also described as a " '[m]eeting of the minds.' " *Kamalnath v Mercy Mem Hosp Corp,* 194 Mich App 543, 548; 487 NW2d 499 (1992) (citation omitted).

Defendant claims that the statute conflicts with the common law because it creates an obligation without consent and, therefore, should be interpreted as narrowly as possible. Plaintiff, however, argues that defendant constructively acquiesced by deciding to operate a motel in the assessment district, and, fur-

ther, plaintiff is not a private person but rather a quasi-governmental entity authorized to collect the assessment. Neither party cites any authority regarding whether contract law in general applies to the assessment. Clearly, the Legislature authorized plaintiff to collect an assessment without the assent of motel operators who voted against the assessment. See MCL 141.875(1). There need not be an offer and acceptance and mutual assent for a motel to be assessed under MCL 141.871 *et seq.* The Legislature, therefore, has indicated that these common-law principles do not apply to the assessments and that this Court should not interpret the assessment statutes in light of these principles.

Defendant also argues that the district court's interpretation of the statutes leads to unjust results because other tourist bureaus remove facilities from the assessment obligation, and plaintiff itself has removed other facilities. Defendant cites *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999), and *Gilbert v Second Injury Fund*, 237 Mich App 101, 105; 603 NW2d 104 (1999), vacated 463 Mich 866 (2000), in which the courts held that statutes should be interpreted to avoid unjust results. However, the unjust-results rule is subject to the same limitation set forth in *Gilbert, supra,* 463 Mich 866: it applies only when the statute is ambiguous, and the apparent unfairness of a result only acts as evidence that the Legislature likely did not intend that result. This Court's limited role is to interpret what the Legislature did intend, not whether that decision was the best or wisest. *Tyler, supra* at 392 n 10; *Oakland Co Bd, supra* at 612-613; *Koontz, supra* at 47.

Finally, defendant argues that the provision making voluntary membership permanent actually indicates that the Legislature believed other membership was not permanent. Under the doctrine of *expressio unius est exclusio alterius*, an express mention of one thing generally implies the exclusion of similar things that were not mentioned. *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997); *Alcona Co, supra* at 247. However, like all rules of construction, the doctrine cannot be applied if it defeats the Legislature's intent; it is simply a means to determine that intent. *Grand Rapids Employees Independent Union v Grand Rapids*, 235 Mich App 398, 406; 597 NW2d 284 (1999).

It could be argued that the Legislature would have seen no reason to make voluntary membership permanent if it believed all membership was already permanent. However, the Legislature may have believed clarification was necessary because voluntary members might be more likely to assume they could simply change their minds, unlike owners who were required to join when the program began. Therefore, it would be reasonable for the Legislature to include the provision even if mandatory membership were permanent.

On the other hand, it would also be reasonable for the Legislature to make voluntary membership permanent while mandatory membership was not. Voluntary members directly consented to join and pay the assessment despite not meeting the definition of a transient facility. The Legislature may have wanted to prevent owners from joining when advantageous and then immediately leaving before paying many monthly assessments. The Legislature may not have had that

same concern about owners who were forced to pay assessments because they owned transient facilities. The Legislature may have thought it reasonable for an owner who no longer owned a transient facility to stop paying assessments, even if the owner still had a motel with nine or fewer transient rooms. It is difficult to speculate regarding whether the Legislature would have made voluntary membership permanent while mandatory members may leave if they no longer meet the definition of a transient facility.

Therefore, this Court will return its focus to the statutes themselves. "Transient facility" is defined in MCL 141.872(m). As previously stated, defendant's motel no longer fits that definition. The statutes do not state whether a motel must meet the definition when the marketing program begins or when the assessments are due. MCL 141.875(1) provides that the owner of a transient facility must pay the assessment each month; it does not clarify whether the facility must only have been a transient facility when the first assessment was collected, or whether it still must be one. However, it is unlikely that an owner who has subsequently turned the facility into long-term apartments would be required to pay indefinitely, or until other owners who were actually benefiting from the program decided to discontinue it under MCL 141.878(1). One cannot distinguish legally between that owner and one whose facility does not meet the definition of a transient facility because only nine rooms are available to transient guests. Either way, that person does not own a transient facility under MCL 141.872(m).

The Legislature did not include a provision making mandatory membership permanent. This Court can-

not create a provision that is not there simply because it may have made sense for the Legislature to do so. See *Levy, supra* at 487. Plaintiff argues that the primary proof that withdrawal is prohibited is that the Legislature included no provision authorizing withdrawal outside of discontinuing the program under MCL 141.878(1). Still, it is unclear why the Legislature expressly authorized withdrawal rather than relying on the requirement that the facilities meet the definition of a transient facility. It is likely the Legislature intended that when a facility did not meet the definition, it automatically was no longer subject to the assessment. The facility would be required to prove that if challenged in the same manner as any facility claiming nine or fewer rooms for transient guests.

Although viable arguments exist on both sides, we conclude that a mandatory member's facility that no longer meets the definition of a transient facility is no longer subject to the assessment. Therefore, defendant need not pay the assessment if she is using fewer than ten rooms for transient guests.

### III. CONCLUSION

In summary, we conclude that defendant's motel using fewer than ten rooms does not meet the definition of a transient facility. Further, defendant need not pay the assessment if her motel is not currently a transient facility. We reverse the circuit court's order affirming the district court's grant of summary disposition to plaintiff.