*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH KUILEMA,

Plaintiff-Appellee,

v

CALVIN UNIVERSITY,

Defendant-Appellant.

UNPUBLISHED
July 11, 2025
2:27 PM

No. 367310
Kent Circuit Court
LC No. 23-003561-CZ

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Plaintiff, Joseph Kuilema, filed this suit against defendant, Calvin University, alleging that he was wrongfully terminated from his employment at Calvin University in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Calvin University moved for summary disposition under MCR 2.116(C)(8), but its motion was denied by the trial court. Calvin University appeals that order by leave granted.[1] For the reasons stated in this opinion, we affirm the court's denial of summary disposition of Kuilema's retaliation claim, but we reverse the court's order denying summary disposition on Kuilema's associational discrimination claim and remand for entry of an award summarily dismissing that claim.

## I. BASIC FACTS

According to the complaint, Kuilema began working for Calvin University as a social work professor in 2008, and his term of employment was extended multiple times. He was expected to teach his courses from the Christian Reformed Church's (CRC) perspective, but he did not teach religion and was not otherwise expected to incorporate religious teachings into his courses. Kuilema asserted that he "did not teach the CRC's perspective in a way which furthered its influence on students. Rather he was bluntly honest and vocal with his students, fellow faculty, and fellow Calvin University community members whenever he disagreed with the CRC's

---

[1] *Kuilema v Calvin Univ*, unpublished order of the Court of Appeals, entered March 21, 2024 (Docket No. 367310).

position, particularly in regard to its positions regarding LGBTQ+ persons." Throughout his career at Calvin University, Kuilema expressed several times to members of the administration his belief that the university was "wronging" LGBTQ+ persons.

In 2017, Kuilema began preparing for tenure consideration; however, the Calvin University Board of Trustees denied him tenure and instead renewed his contact for an additional two years. In 2019, Kuilema's contract was renewed for two more years, but he was again not considered for tenure. The same occurred in 2021. Kuilema's beliefs regarding LGBTQ+ persons, which were contrary to the CRC's positions, was a factor in the decision to not move forward with tenure consideration.

In October 2021, Kuilema officiated a same-sex wedding for a former student and a former Calvin University employee. Before doing so, he consulted with his pastor, department chairperson, and colleagues to ensure that officiating such a wedding was not counter to CRC teachings or Calvin University's values. Kuilema asserted that his officiating the marriage ceremony was not contrary to the CRC's position because the CRC had only declared opposition to same-sex sexual relations, not marriage. He claimed that Calvin University also only opposed same-sex sexual relations, but that it had no official policy position regarding same-sex marriage.

In December 2021, Calvin University became aware that Kuilema may have officiated a same-sex marriage. Following an investigation that confirmed that fact, Calvin University declined to reappoint Kuilema to his teaching position and terminated his employment. According to Kuilema's complaint, during the deliberations of the Professional Status Committee, members addressed (1) Kuilema's officiating of a same-sex marriage, (2) his opposition to showing what Kuilema believed to be a "racist" film, and (3) his opposition to Calvin University questioning the Calvin University employee whose same-sex marriage Kuilema had officiated during its investigation of him.

In April 2023, Kuilema filed a lawsuit against Calvin University, asserting claims of associational discrimination in violation of ELCRA and retaliation in violation of ELCRA. In lieu of filing an answer, Calvin University moved for summary disposition under MCR 2. 116(C)(8). Following a hearing on the motion, the trial court denied summary disposition. This appeal by leave granted follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Calvin University argues that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(8). We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Motions brought under MCR 2.116(C)(8) test the complaint's legal sufficiency. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. Summary disposition may be granted only "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 159-160.

## B.  ANALYSIS

### 1.  ASSOCIATIONAL DISCRIMINATION

Calvin University argues that the trial court erred by denying summary disposition of Kuilema's claim that he was terminated in violation of ELCRA based upon his decision to officiate a same-sex marriage.  We agree.

As relevant to this case, ELCRA prohibits employers from discharging or otherwise discriminating "against an individual with respect to employment . . . because of . . . sex . . . ." MCL 37.2202(1)(a).  There is no language prohibiting discrimination against an individual because of *association* with others persons based upon the sex of the other persons.  If the Legislature had wanted to include such language, it would have added it to the statute as it has done in other statutes prohibiting discrimination.  See MCL 37.1502(1) (prohibiting housing discrimination "on the basis of a disability of a buyer or renter, . . . or of any person associated with that buyer or renter).  We cannot "assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."  *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).  Rather, we must "assume that an omission was intentional."  *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 135; 662 NW2d 758 (2003).

Notwithstanding that there is no express language providing a claim for associational discrimination in MCL 37.2202, Kuilema contends that caselaw supports such a claim.  Although there are no cases in Michigan addressing associational discrimination based upon the sex of persons that the plaintiff has associated with, the parties have identified two cases addressing racial discrimination on the basis of the plaintiff's association with a member of a different race.  Both are distinguishable from the present matter.

First, in *Bryant v Automobile Data Processing, Inc*, 151 Mich App 424, 429-431; 390 NW2d 732 (1986), the plaintiff raised a claim of associational discrimination, arguing that she was discriminated against because she was a white female married to a black male.  *Id*. at 428.  The defendant employer contended that because her claim was grounded upon the racial identity of her spouse, she had not brought a cognizable claim under § 202 of ELCRA.  *Id*.  This Court disagreed, noting that the purpose of ELCRA "is to prevent discrimination against persons based on *their* membership in a certain class and to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases."  *Id*. at 430 (emphasis added).  The court reasoned that:

> Discrimination against interracial couples is certainly based on racial stereotypes and is derived from notions that the blood of the races should not mix.  We believe that both the broad language of the civil rights act and the policies behind the act should be read to provide protection from discrimination for interracial couples.  If an employer discriminates against a white (or black) employee because of the latter's marriage to a black (or white) spouse, the race of both the employee and the spouse is a motivating factor.  Thus, it must be concluded that the employee in such a case is discriminated against "because of race" and the civil rights act is applicable. [*Id*.]

Next, in *Graham v Ford*, 237 Mich App 670, 672; 604 NW2d 713 (1999), the plaintiffs, who were black, alleged discrimination in violation of ELCRA on the basis of their race and their association with their white coworkers. Applying the reasoning from *Bryant*, the *Graham* Court concluded that the defendant had a "discriminatory predisposition and animus toward plaintiffs based on race and race association." *Id*. at 678. As it related to the associational discrimination portion of the claim, the *Graham* Court explained that the plaintiffs had presented evidence that their employee "regarded the black plaintiffs unfavorably because of their working relationships with white . . . employees." *Id*.

Notably, in both *Bryant* and *Graham*, the plaintiffs claims were based upon members of one race associating with members of a different race. Therefore, in both cases, the race of the plaintiff was a key factor in the discrimination. The employer in *Bryant* was discriminating against the plaintiff because she was a white woman married to a black man, and the employer in *Graham* was discriminating against its black employees because they were associating with its white employees. If the plaintiff in *Bryant* had been a black woman married to a black man and if the employees in *Graham* were white employees associating with other white employees, there would have been no claim for racial discrimination on the basis of their association with others because it was only when *their* race was considered in relation to the race of the persons that they were associating with that there was racial discrimination.

In contrast, Kuilema's sex is irrelevant to Calvin University's decision to terminate his employment. The university's decision to terminate his employment was based upon his decision to officiate a same-sex wedding. That decision would not have been different if Kuilema were a female instead of a male. Accordingly, neither *Bryant* nor *Graham*, both of which addressed discrimination against the individual plaintiffs based in part upon their race, are not applicable in this case because there is no allegation whatsoever that Kuilema's sex had any impact on the termination decision.

Our Supreme Court's decision in *Rouch World, Inc v Dep't of Civil Rights*, 510 Mich 398; 987 NW2d 501 (2022) supports our analysis of the associational discrimination claims *Bryant* and *Graham*. As relevant to this case, the Court held that "[t]he ELCRA's prohibition of sex discrimination requires a determination whether a specific individual was treated worse than a member of the opposite sex would have been; it does not ask how one sex-based group is treated compared to another sex-based group." *Id*. at 428. "In other words, causation is established where the discriminatory action would not have occurred but for the sex of the complainant." *Id*. at 420. The question that must be answered in a sex-discrimination claim, therefore, is whether the plaintiff was discriminated against "because of" their sex. *Id*.

The but-for causation test from *Rouch* was satisfied by the plaintiffs in *Bryant* and *Graham* because the discriminatory action would not have occurred but for the fact that the plaintiffs had a different race from the persons with whom they were associating with. Here, however, based upon the allegations in the complaint, the discriminatory action would have occurred *regardless* of Kuilema's sex. As a result, he cannot establish causation under § 202 because *his* sex had no bearing upon the allegedly discriminatory action.

In sum, because Kuilema did not allege a legally sufficient claim for discrimination because of sex under ELCRA, the trial court erred by denying summary disposition under MCR 2.116(C)(8).

## 2. RETALIATORY DISCRIMINATION

Next, Calvin University argues that the trial court erred by denying summary disposition of Kuilema's claim for retaliation under ELCRA. We disagree.

ELCRA also prohibits persons from retaliating or discriminating "against a person because the person has opposed a violation" of ELCRA. MCL 37.2701(a). "To establish a prima facie case of retaliation under the ELCRA, a plaintiff must show (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Meyer v City of Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000). "Protected activity" under the ELCRA is defined to include opposition to a violation of" ELCRA. MCL 37.2701(a).

Here, Kuilema first alleged that he was retaliated against for his opposition to a colleague showing an allegedly racist film. He suggests that his opposition to the film "raised the specter of a discrimination complaint under" MCL 37.2402. He also alleged that he was retaliated against in violation of ELCRA for opposing Calvin University's decision to question the employee whose same-sex wedding he had officiated. He alleged that such questioning created a hostile and discriminatory work environment in violation of ELCRA. In both instances, he alleged that Calvin University was aware of his opposition and that there was a causal connection between the decision to fire him and his opposition to the alleged violations of ELCRA.

On appeal, Calvin University argues that the allegations in Kuilema's complaint are legally insufficient because he has not shown that his opposition to either action amounted to opposing a violation of ELCA. However, although "the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot." *El-Khalil*, 504 Mich at 162. Here, regardless of whether Kuilema will be able to prove that he engaged in a protected activity by opposing the allegedly racist film and the questioning of an employee regarding his own actions in officiating that employee's wedding, he alleged that each element of a retaliatory discrimination claim occurred. That is sufficient to survive summary disposition under MCR 2.116(C)(8).[2]

---

[2] Calvin University argues that Kuilema's complaint is barred by the ecclesiastical abstention doctrine. See *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327; 901 NW2d 566 (2017). However, only Kuilema's claim for associational discrimination implicates the ecclesiastical abstention doctrine. Given that our conclusion that Kuilema failed to state a claim upon which relief could be granted with relation to that claim, we decline to address whether dismissal would also be warranted under the ecclesiastical abstention doctrine.

-5-

We affirm the trial court's denial of summary disposition of Kuilema's retaliation claim under MCL 37.2701(a), but reverse the court's denial of summary disposition of Kuilema's associational discrimination claim under MCL 37.2202(1)(a). On remand, the trial court shall enter an order summarily dismissing Kuilema's associational discrimination claim. We do not retain jurisdiction. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Stephen L. Borrello