*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THE JAZZ CLUB 2 LLC, and GEORGE
BRIKHO,

        Plaintiffs-Appellants,

v

DETROIT BOARD OF ZONING APPEALS,

        Defendant-Appellee.

UNPUBLISHED
January 9, 2020

No. 343872
Wayne Circuit Court
LC No. 17-015208-AA

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

The Jazz Club 2 LLC (Jazz Club) and its principal, George Brikho, appeal by leave granted[1] the circuit court's decision and order affirming the City of Detroit Board of Zoning Appeals' (BZA's) decision upholding the City of Detroit Buildings, Safety Engineering and Environmental Department's (BSEED's) determination that the Jazz Club was ineligible for a medical marijuana caregiver business license because it is located in a drug-free zone. Plaintiffs argue that the circuit court erred by upholding the BZA's decision on the ground that the Rouge Valley Parkway, a future greenway, qualifies as a park under the applicable zoning ordinance. We agree and reverse and remand to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

---

[1] *The Jazz Club 2 LLC v City of Detroit Board of Zoning Appeals*, unpublished order of the Court of Appeals, entered on October 19, 2018 (Docket No. 343872).

In March 2016, plaintiffs applied for a conditional use permit to continue to operate a medical marijuana caregiver center (MMCC),[2] a medical marijuana dispensary, at 16890 Telegraph Road in the city of Detroit. The question presented by the case is whether the operation of a MMCC at this location complies with Section 61-3-354(b)(1) of the Detroit Zoning Ordinance,[3] which prohibits the BSEED from approving any request for a MMCC "where located within a drug-free zone," as that term is defined by Section 61-3-353 of the zoning ordinance. A drug-free zone is defined as, in relevant part, "an area that is within a 1,000 radial feet of the zoning lot of . . . [a]n outdoor recreation facility, as defined in [Sec. 61-16-144]" of the zoning ordinance. Detroit Zoning Ordinance, § 61-3-353(5). In turn, the zoning ordinance defines an "outdoor recreation facility" as:

> The use of land for the purposes of a golf course; skating rink (ice skating, roller skating, roller blading, skate boarding, and similar activities), park, playfield, playground, parklot, parkway, playlot; swimming pool; and/or tennis court. [Detroit Zoning Ordinance, § 61-16-144.]

The BSEED concluded that the Rouge River Parkway was part of an active park system and, therefore, that the Jazz Club, which was located within 818 radial feet of the Parkway, was located in a drug-free zone. The BSEED explained that the City of Detroit Parks and Recreation Department was in the preliminary stages of creating a greenway that would connect the Rouge Valley Parkway to Eliza Howell Park and potentially extend northward. The greenway would include walking and biking paths with benches and garbage cans, and eventually would be become part of the Eliza Howell Park. Having concluded that the location was in a drug-free zone, the BSEED denied plaintiffs' application.

Plaintiffs appealed to the BZA. Following a public hearing held in October 2017, the BZA concluded that the testimony and evidence from the BSEED established that the property was within 1,000 feet of the Rouge Valley Parkway, which was part of a proposed greenway that would connect to Eliza Howell Park, and that plaintiffs had not presented compelling evidence to the contrary. The BZA affirmed the BSEED's determination that the property at which plaintiffs sought to operate a MMCC was located within a drug-free zone.

Plaintiffs then appealed to the circuit court. They contended that the city's Master Plan identified the Rouge Valley Parkway as a greenway and not as a park. Plaintiffs also argued that the property was not located in a drug-free zone because a greenway was not within the

---

[2] 1984 Detroit Zoning Ordinance § 61-16-131 defines a "medical marihuana caregiver center" as "[a] medical marihuana business operated by a registered primary caregiver that distributes medical marijuana, in a manner authorized by the [Michigan Medical Marihuana Act, MCL 333.26421 et seq.], to registered qualifying patients as defined by the Act, or performs other activities pertaining to medical marihuana authorized by the Act."

[3] The Detroit Zoning Ordinance was recodified (and renumbered) in 2019 as Chapter 50 of the 2019 Detroit City Code. Unless otherwise noted, this opinion will refer to the pertinent ordinance sections as they were codified in Chapter 61 of the 1984 Detroit City Code.

definition of an "outdoor recreation facility" under § 61-16-144. The BZA responded that plaintiffs had failed to establish that the property was not in a drug-free zone or that the Rouge Valley Parkway/greenway was not a part of the park system.

The circuit court affirmed the BZA's decision. It reasoned that the Rouge Valley Parkway, an area that consisted of grass and old playground structures, aligned with the zoning ordinance's description of a park. The circuit court also noted that a BSEED member testified that the property was part of a proposed study to create a greenway, which would be considered outdoor recreation due to the bike path; thus, the city considered it a park. Moreover, lacking a definition of a greenway under the zoning ordinance, the circuit court adopted its ordinary meaning as "a corridor of undeveloped land preserved for recreation use or environmental protection." The circuit court then concluded that the BZA appropriately relied on testimony from the city's staff and the Master Plan to determine that the city would use the Rouge Valley Parkway as part of an active park system and that its intended use likewise fit the common definition of "greenway."

This appeal by leave granted followed. Plaintiffs argue that the circuit court's decision was contrary to law. In part, plaintiffs support their position by noting that the zoning ordinance defines an "outdoor recreation facility" and that that definition does not include a greenway. And relying on the doctrine of *expressio unius est exclusion alterius*, plaintiffs contend that a greenway is not an outdoor recreation facility.

## II. STANDARD OF REVIEW AND LEGAL STANDARDS

We review de novo a circuit court's decision from an appeal from a city's zoning board, giving great deference to the circuit court and zoning board's findings. *Edw. C. Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011). The trial court should review the decision of the zoning board in order to ensure that it: (1) complied with the constitution and laws of the state; (2) was based upon proper procedure; (3) was supported by competent, material, and substantial record evidence; and (4) represented the reasonable exercise of the zoning board of appeals' discretion. *Id*. Accordingly, we will affirm the zoning board's decision as long as it complies with those four criteria. *Janssen v Holland Charter Twp Zoning Bd of Appeals*, 252 Mich App 197, 201; 651 NW2d 464 (2002).

The rules of statutory interpretation apply to our interpretation of municipal ordinances. *Piasecki v City of Hamtramck*, 249 Mich App 37, 40; 640 NW2d 885 (2001). We also review questions of statutory interpretation de novo. *Levy Co*, 293 Mich App at 339.

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). In general, "a reviewing court is to give deference to a municipality's interpretation of its own ordinance." *Macenas v Village of Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989). However, the best indicator of the Legislature's intent is the statute's language, which, if clear and unambiguous, we must apply as written. *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438-439; 716 NW2d 247 (2006). "When a statute specifically defines a given term, that definition alone controls." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007).

-3-

Moreover, "[t]he Legislature is presumed to intend the meaning the statute expresses." *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 228; 779 NW2d 304 (2009).

"Where statutory language is ambiguous, judicial construction is permitted." *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 449; 770 NW2d 117 (2009). "An ambiguity does not exist simply because a court questions whether the Legislature intended the consequence of the language at issue." *Bronson Methodist Hosp*, 286 Mich App at 229. Instead, an ambiguity only exists when the words in the statute can be viewed with more than one accepted meaning. *Id*.

*Expressio unius est exclusion alterius*, or the expression of one thing is the exclusion of another, is a doctrine of statutory interpretation that "characterizes the general practice that when people say one thing they do not mean something else." *Detroit City Council*, 283 Mich App at 456 (quotation marks omitted). This doctrine is a tool that helps ascertain the intent of the Legislature, but does not automatically lead to certain results. *Luttrell v Dep't of Corr*, 421 Mich 93, 107; 365 NW2d 74 (1984). Similarly, we assume that any omission was intentional. *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 135; 662 NW2d 758 (2003).

III. ANALYSIS

As noted, the city's zoning ordinance prohibits the BSEED from providing a license for a MMCC if it is located within a drug-free zone. Detroit Zoning Ordinance § 61-3-355(b)(1). In turn, a drug-free zone is defined as:

[A]n area that is within one thousand (1,000) radial feet of the zoning lot of a(n):

* * *

(4) outdoor recreation facility, as defined in Sec. 61-16-144 of this Code and as identified in the City of Detroit Recreation Master Plan.

*Id*. § 61-3-353. And an "[o]utdoor recreation facility" is defined as:

The use of land for the purposes of a golf course; skating rink (ice skating, roller skating, roller blading, skate boarding, and similar activities), park, playfield, playground, parklot, parkway[4], playlot; swimming pool; and/or tennis court.

---

[4] Despite its literal name, defendant does not argue (and has never argued) that the Rouge River Parkway is a "parkway" within the meaning of the zoning ordinance; instead, the parties recognize it is a future greenway. We note that the zoning ordinance did not define the term "parkway" before 2018. In 2018, the city amended the zoning ordinance to add a definition of parkway. See Detroit Zoning Ordinance § 16-16-151 (defining a parkway as "[a] broad roadway bordered and often divided with landscaped areas consisting of tree plants, bushes, and/or grass, is so designated, and is under the jurisdiction and control of the City of Detroit Recreation

*Id*. § 61-16-144. As to the usage of definitions generally, the zoning ordinance provides:

> This article includes definitions for use categories and many specialized words and terms that are used in this zoning ordinance. All words and terms that are not defined in this article shall be given their common, ordinary meanings, as the context may reasonably suggest.

*Id*. § 61-16-21.

In this case, the circuit court erred when it determined that the Rouge Valley Parkway, a proposed greenway, was an "outdoor recreation facility" within the meaning of the zoning ordinance. Initially, the circuit court incorrectly determined that the "greenway" was a "park." The circuit court relied on Detroit Zoning Ordinance § 61-16-151, which contains the following definition for "Park and Open Space (Use Category)":

> Uses of land involving natural areas, large areas consisting of mostly vegetative landscaping or outdoor recreation, or public squares. Lands tend to have few structures.
>
> Examples include the following uses:
>
> - Cemeteries (including mausoleums, crematories, or columbaria)
> - Golf course
> - Skating rink
> - Park, playfield, playground, parklot, parkway and playlot
> - Swimming pool
> - Tennis court

Thus, what the circuit court looked to was not a definition of the word "park," but rather, what types of land uses fit within the "Park and Open Space" use category of the city's zoning ordinance. A "park" is but one example of a use that fits within the "Park and Open Space" use category. The general description of this broader use category as a use "of land involving natural areas, large areas consisting of mostly vegetative landscaping or outdoor recreation, or public squares[]" does not define what amounts to a "park." Logically, the definition of a park, as stated in the definition of "outdoor recreation facility," must be more restricted or specific than the broad description of the "Park and Open Space" use category provided at the outset of § 61-16-151. However, because the term "park" is otherwise used in the ordinance, we may give the term its ordinary meaning.[5]

---

Department."). The record contains no evidence that the Rouge Valley Parkway falls within this new definition.

[5] After the circuit court issued its opinion, the city added a new definition of the word "park" to its zoning ordinance:

Our Supreme Court has previously addressed the meaning of the term "park." In *Clark v Grand Rapids*, 334 Mich 646, 658; 55 NW2d 137 (1952), it stated that "[a] park may be a woodland preserve as well as a landscaped playground." The Court went on to quote Black's Law Dictionary to define a park as " '[a] pleasure ground for the recreation of the public to promote its health and enjoyment. . . . A piece of ground enclosed for purposes of pleasure, exercise, amusement, or ornament. . . . A place for the resort of the public for recreation, air and light, a place open to everyone.' " *Id*., quoting *Black's Law Dictionary*, 3d ed, p 1325.

In *Grand Haven Twp v City of Grand Haven*, 33 Mich App 634, 641-642; 190 NW2d 714 (1971), remanded 386 Mich 754 (1971), we quoted 46 CJ, Park, § 2, pp 1373-1374, for the following definition:

> While, in its ordinary and natural meaning in common parlance, the term may, both in this country and in England, be applied to private lands that have been inclosed as well as to lands that have been devoted to the recreation and enjoyment of the public, in its modern use, especially in this country, where its meaning is to be determined by the circumstances connected with its use, the term, as ordinarily used, has been variously defined as meaning a detached tract of land, generally of quite sizable proportions, devoted to purposes of ornamention [sic] and recreation; an extensive area of land devoted exclusively to the use of the public and to be ornamented and embellished; an open or inclosed tract of land for the comfort and enjoyment of the inhabitants of the city or town in which it is located; an open space intended for the recreation and enjoyment of the public; any piece of public ground, generally in or near a large town, laid out

Land that is improved for, or intended to be improved for, passive or recreational uses, or to be preserved as open spaces, including but not limited to major parks and small (neighborhood) parks, is so designated, and is under the jurisdiction and control of the City of Detroit Parks and Recreation Department. [Detroit Zoning Ordinance § 61-16-151.]

Notably, even under this definition, the Rouge Valley Parkway does not qualify as a park. In other documents, the city specifically indicates that greenways and parks are different. The 2017 Parks and Recreation Improvement Plan, or the Master Plan, includes maps showing both parks and greenways and confirms that the two are different. The Master Plan also identifies greenways as spaces of land that connect other parks, further indicating that the city views greenways and parks differently. Arguably, the city's proposed usage of the land, under which Rouge Valley Parkway eventually would connect parks and would include biking/walking trails, may be consistent with that of a "park." However, the ordinance provides that the city must designate the area as a park in order for it to be a park. The Master Plan and the city's 2017 "Parks and Recreation Improvement Plan" classify the land as a proposed greenway, not a park. Thus, under the plain language of the updated ordinance, the proposed greenway still does not qualify as a park. *Neshewat*, 477 Mich at 35.

and cultivated for the sole purpose of pleasure or recreation, without any regard to the size of the ground or the style of the arrangement; a piece of ground adapted and set aside for purposes of ornament, exercise, or amusement; a piece of ground inclosed for public recreation or amusement; a piece of ground of any size, in or close to a town, and opened to the public for the purposes of recreation, pleasure, or exercise, subject to the regulation of the local authorities; a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open air recreation; a piece of ground within a city or town inclosed and kept for ornament and recreation; a place for the resort of the public for recreation, air, and light; a place set apart for the enjoyment, comfort, and recreation of the inhabitants of the city or town in which it is located; a place to be kept opened and ornamented for public uses, which may include anything conducing to the public pleasure, amusement, recreation, or health; a pleasure ground in or near a city set apart for the recreation of the public; a plot of ground in a city or town, set apart for ornament; a public pleasure ground; a tract of land set apart for ornament, or to afford the benefit of air, exercise, or amusement. The term has been held to include a Grove and a public golf course, but not a game and fish preserve, a playground and athletic field, or a tourist camp.

Some more recent and relevant definitions of a park are "a piece of ground in or near a city or town kept for ornament and recreation," or alternatively, "an area maintained in its natural state as a public property." *Merriam-Webster's Collegiate Dictionary* (11th ed).

Common to all of these definitions is that a "park" is an area that is used for purposes of recreation or pleasure. But the record demonstrates that Rouge Valley Parkway's current usage is not remotely related to recreation or pleasure. Rather, the uncontested evidence indicates that it is a large, vacant parcel of land that is used by certain members of the public to dump garbage, vehicles, and the occasional dead body. It contains a rusted swing set and a former basketball court overrun by vegetation. In light of the common understanding of what amounts to a park, the Rouge Valley Parkway is simply not a park. The concept of a park seems tied to the idea that it is being used by the public for some sort of recreational enjoyment or is being preserved in its natural state. Neither is occurring with the Rouge Valley Parkway. Rather, it is an unmaintained parcel of land that is predominantly used for illegal activities.

Indeed, the record demonstrates that the city does not consider the area to be a park. In 2017, the city crafted a "Parks and Recreation Improvement Plan." A map and spreadsheet therein identify several hundred parks. The Rouge Valley Parkway, however, is not identified as a park. Instead, it is identified as a greenway. Other pages in the same report demonstrate that greenways and parks are different and that the terms are not interchangeable. The report discusses the proximity of greenways to parks. Those parks that intersect with a greater number of present or planned future greenways are given a higher number of points and prioritized for improvement. This also shows that the city does not consider greenways to be parks.

The proposed greenway also does not fit the definition of "outdoor recreation facility." Importantly, the word greenway does not appear in the definition despite being used elsewhere, such as in the city's Master Plan. Detroit Zoning Ordinance, § 61-16-144. Accordingly, this

Court should presume that the city intentionally omitted the term "greenway" from the definition. *Wood*, 255 Mich App at 135.

Moreover, the proposed usage of the land—connecting parks with benches, garbage cans, and walking/biking trails—is not included in the definition of "outdoor recreation facility." Instead, the definition provides an enumerated list of activities for which the land could be used, such as a golf course, a skating rink, a playground, a swimming pool, or a tennis court, but it does not include biking, walking, or land that is used to connect parks to each other. Detroit Zoning Ordinance, § 61-16-144. Although not dispositive, the exclusion of these uses and the inclusion of many others further support our conclusion that this proposed greenway does not otherwise qualify as an "outdoor recreation facility" within the meaning of the zoning ordinance. *Detroit Mayor*, 283 Mich App at 456; *Luttrell*, 421 Mich at 107.[6]

Accordingly, the circuit court erred when it determined that, due to its proximity to the Rouge Valley Parkway, plaintiffs' proposed MMCC was located within a drug-free zone. We reverse the circuit court's order and remand for further proceedings consistent with this opinion.[7] We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Anica Letica

---

[6] We note that the city's discussion of whether it abandoned the park is irrelevant here, as plaintiffs are not seeking to alter ownership of the land by claiming abandonment. They are merely arguing that the property is not located within a drug-free zone.

[7] Because the circuit court erred by determining that plaintiffs' land was located within a drug-free zone, we decline to address their additional argument that the BZA issued its final decision and order in violation of the Open Meetings Act, MCL 15.261 *et seq*.