GMOSER'S SEPTIC SERVICE, LLC v EAST BAY
CHARTER TOWNSHIP

Docket No. 309999. Submitted February 12, 2013, at Lansing. Decided
February 19, 2013, at 9:00 a.m.

Gmoser's Septic Service, LLC and Whitney Blakeslee filed an action
against East Bay Township, Grand Traverse County, and the
Grand Traverse County Board of Public Works in the Grand
Traverse Circuit Court, seeking a determination that the town-
ship's septage control ordinance, which required septage haulers
to transport all septage taken from tanks located within a certain
area to the Grand Traverse County Septage Treatment Facility,
was invalid and unenforceable. The Michigan Septic Tank Asso-
ciation intervened and moved for partial summary disposition,
arguing that the ordinance was invalid because it was preempted
by MCL 324.11709. The court, Philip E. Rodgers, J., rejected the
association's preemption claim, denied its motion, and granted
partial summary disposition in favor of defendants on the preemp-
tion claim. The association appealed.

The Court of Appeals *held*:

A local government cannot enact an ordinance that is in direct
conflict with a state statutory scheme. Const 1963, art 7, § 22. A state
statutory scheme preempts local regulation in that same field when
the Legislature enacts a statutory scheme with the intent to entirely
occupy the regulatory field. The Legislature intends to preempt local
regulation when it expressly provides for preemption. In the absence
of an express statement of such intent, courts will infer that the
Legislature intended to preempt local regulation when the state
scheme occupies the field of regulation to the exclusion of the
ordinance. Preemption may be implied (1) from the statutory
scheme's legislative history, (2) from the pervasiveness of the state
regulatory scheme, or (3) from the nature of the regulated subject
matter which necessitates exclusive state regulation to achieve the
uniformity necessary to serve the state's purpose or interest. The
trial court properly granted partial summary disposition in favor of
defendants on the preemption claim. By enacting part 117 of the
Natural Resources and Environmental Protection Act, MCL
324.11701 *et seq.*, the Legislature clearly intended to enact a compre-

hensive statutory scheme for the regulation of septage services and septage disposal with the goal of limiting land application as a disposal method in favor of treatment at a receiving facility In this case the septage ordinance regulated septage servicers and septage disposal by banning the use of land application to dispose of septic waste when a real property owner serviced his or her own septic tank. The septage ordinance properly required all septage haulers collecting septage or holding-tank waste within the township to transport that waste to the Grand Traverse facility and to pay treatment charges. Although the Legislature enacted a comprehensive and statewide scheme for the regulation of septage servicers and the disposal of septage, it specifically limited the preemptive effect of its statutory scheme; under MCL 324.11715(1), a local ordinance that conflicts with the statutory scheme will not be preempted if it is a qualified ban on land application or if it imposes more strict requirements on septage disposal than that expressed in the statutory scheme. Under MCL 324.11715(1), the septage ordinance's requirement that servicers always use a receiving facility and always use a specified facility are not preempted by part 117 of the Natural Resources and Environmental Protection Act because they are more strict than those specified by the Legislature.

Affirmed.

MUNICIPAL CORPORATIONS — SEPTAGE DISPOSAL ORDINANCES — STATUTES — PREEMPTION.

A local government cannot enact an ordinance that is in direct conflict with a state statutory scheme; a state statutory scheme preempts local regulation in that same field when the Legislature enacts a statutory scheme with the intent to entirely occupy the regulatory field; the Legislature intends to preempt local regulation when it expressly provides for preemption; in the absence of an express statement of such intent, courts will infer that the Legislature intended to preempt local regulation when the state scheme occupies the field of regulation to the exclusion of the ordinance; the Legislature did not preempt local governmental authority to regulate septage disposal; MCL 324.11715(1) grants local governments the authority to regulate septage disposal as long as any ordinance is more strict than those requirements provided by the Legislature in part 117 of the Natural Resources and Environmental Protection Act, MCL 324.11701 *et seq.*

*Kuhn, Darling, Boyd & Quandt, PLC* (by *Joseph E. Quandt* and *Gina Bozzer*), for the Michigan Septic Tank Association.

*Olson, Bzdok & Howard, P.C.* (by *Scott W. Howard* and *Ross A. Hammersley*), for East Bay Charter Township, Grand Traverse County, and Grand Traverse County Board of Public Works.

Before: FITZGERALD, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM. In this dispute over the local regulation of septage waste, intervening plaintiff, Michigan Septic Tank Association, appeals by right the trial court's order dismissing the association's claim that Part 117 of the Natural Resources and Environmental Protection Act, MCL 324.11701 *et seq.*, preempts defendant, East Bay Charter Township's, ordinance requiring septage service providers to deliver all septic-tank waste collected from within the township for treatment at the Grand Traverse County Septage Treatment Facility (the Grand Traverse facility), which is operated by defendant, Grand Traverse County, through defendant, Grand Traverse County Board of Public Works. On appeal, the association argues that the trial court erred when it determined that the township's ordinance was specifically authorized under MCL 324.11715(1) and, therefore not preempted under Part 117. Because we conclude that the trial court properly determined that the township's ordinance constituted a stricter requirement for purposes of MCL 324.11715(1) and for that reason was not preempted, we affirm.

### I. BASIC FACTS

Beginning in 1989, septic waste haulers began to express concern to the board of public works and public officials about the continuing viability of land application for the disposal of septage within Grand Traverse

County. Because of these concerns, the board of public works undertook to build the Grand Traverse facility in 2005. To help finance the Grand Traverse facility, to ensure that it maintained optimal operational performance, and to ensure that septage was properly treated, the board of public works drafted a uniform septage ordinance for those communities that wished to participate in the plan. The ordinance required septage haulers to transport all septage taken from tanks located within the participating communities to the facility for treatment. The township adopted the uniform ordinance in November 2004.[1]

Defendant, Whitney Blakeslee, owns and works for Gmoser's Septic Service, LLC. Gmoser's Septic provides septage removal services for customers in the township and other nearby communities. Blakeslee stated in his affidavit that he is the coowner of Bullseye Receiving, LLC, which is a septage disposal facility in Antrim County. Blakeslee also averred that—while working for Gmoser's Septic—he serviced septic tanks in the township and would sometimes haul the waste to the Grand Traverse facility, but on other occasions would haul the waste to Bullseye's facility.

In February 2011, the township's lawyer sent a letter to Blakeslee and Gmoser's Septic warning them of an ordinance violation. The township's lawyer noted that there was information that Gmoser's Septic had pumped and hauled septic-tank waste from a residence located in the township, but did not deliver the waste to the facility. The township's lawyer explained that under the township's Uniform Septage Control Ordinance of 2004 (septic ordinance), Gmoser's Septic had to haul

---

[1] We have taken these background facts from the affidavit by K. Ross Childs, who served as a public official in Grand Traverse County from 1976 to 2011.

any septic-tank waste that it collected from a customer in the township to the facility. He wrote that Gmoser's Septic was liable for the 12-cents-per-gallon fee that would have been assessed had it properly delivered the waste to the facility in addition to a $100 fine, for a total of $220. The township's lawyer also threatened further action if Gmoser's Septic failed to comply with the ordinance in the future.

Later that same month, Gmoser's Septic and Blakeslee sued the township and Grand Traverse County for declaratory relief; they asked the trial court to declare that the township's ordinance was invalid and unenforceable on a variety of grounds.

In June 2011, the association moved for permission to intervene on behalf of its members. Specifically, the association wanted to protect its members from local ordinances such as the township's that require its members to use the Grand Traverse facility. After the trial court granted the motion, the association filed its own complaint alleging that the township's ordinance was invalid.

The association moved for partial summary disposition in September 2011. In its motion, the association argued that the township's ordinance was preempted by MCL 324.11708.

The trial court disagreed that MCL 324.11708 preempted the township's ordinance. Instead, it concluded that the Legislature had specifically authorized local governments to impose stricter requirements on the disposal of septage, such as the township's requirement that all septage taken from within the township be processed at the Grand Traverse facility. Accordingly, it concluded that the association's preemption claim failed as a matter of law. For that reason it denied the association's motion and granted partial summary disposition in defendants' favor

on the preemption claim. See MCR 2.116(I)(2). The trial court entered an order dismissing the association's preemption claim in October 2011 and, in December 2011, the association stipulated to the dismissal of its remaining claims with prejudice.

In January 2012, the trial court entered an order dismissing Gmoser's Septic and Blakeslee's claims and granting summary disposition in defendants' favor on their counter-claims. And, in April 2012, the trial court entered an order compelling Gmoser's Septic to comply with the ordinance and pay $19,500 in fines and fees.[2]

The association now appeals the trial court's decision to dismiss its preemption claim.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

On appeal the association argues that the trial court erred when it denied the association's motion for summary disposition of its claim that state law preempted the township's ordinance. Specifically, the association argues that the township's ordinance is invalid because it directly conflicts with the state statutory scheme for the handling of septage or, in the alternative, that the state statutory scheme is so comprehensive that it occupies the field and preempts the township's ordinance. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation of statutes and ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

---

[2] These orders are not at issue in this appeal.

## B. ORDINANCE PREEMPTION

A local government's power to enact ordinances is subject to the constitution and law. *People v Llewellyn*, 401 Mich 314, 321; 257 NW2d 902 (1977); Const 1963, art 7, § 22. As such, a local government cannot enact an ordinance that is in direct conflict with a state statutory scheme. *Llewellyn*, 401 Mich at 322. In addition, when the Legislature enacts a statutory scheme with the intent to entirely occupy the regulatory field, that statutory scheme will preempt any local regulations in that same field. *Id.* In every case, however, whether an ordinance is preempted by a statutory scheme is a matter of determining the Legislature's intent from the statutory language. *Shelby Twp v Papesh*, 267 Mich App 92, 98; 704 NW2d 92 (2005). There is no doubt that the Legislature intends to preempt local regulation when it expressly provides for preemption. *Llewellyn*, 401 Mich at 323. Even in the absence of an express statement of intent, however, courts will infer that the Legislature intended to preempt local regulation when the state scheme occupies the field of regulation "to the exclusion of the ordinance." *Id.* at 322. Such preemption may be implied from the statutory scheme's "legislative history," from the "pervasiveness of the state regulatory scheme," or from the "nature of the regulated subject matter," which necessitates "exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." *Id.* at 323-324.

With Part 117, the Michigan Legislature provided for the regulation of septic-waste services, including the "cleaning, removing, transporting, or disposing, by application to land or otherwise, of septage waste." MCL 324.11701(z). A septage-waste servicer cannot "engage in servicing or contract to engage in servicing" except as authorized by a septage-waste servicing license and a

septage-waste vehicle license issued by the Department of Environmental Quality. MCL 324.11702(1). In addition to the licensing requirements, the Legislature regulated the ways in which a waste servicer may lawfully dispose of septage.

The Legislature provided that a servicer may dispose of its septage through land application, but only when authorized by a site permit. MCL 324.11709; see also MCL 324.11710 (stating the minimum requirements for site permits). Moreover, even if a servicer is authorized under a permit to use land application to dispose of septage, the Legislature limited the use of land application to those circumstances in which the servicer does not have ready access to a receiving facility: "if a person is engaged in servicing in a receiving facility service area, that person shall dispose of the septage waste at that receiving facility or any other receiving facility within whose service area the person is engaged in servicing." MCL 324.11708(3). That is, if the servicer engages in the provision of septage services within a specified distance of a receiving facility that is capable of taking and treating the septage, see MCL 324.11701(s) (defining receiving facility service area), the servicer cannot use land application to dispose of the septage; instead, the servicer must deliver the waste to that receiving facility or to any other receiving facility within whose servicing area the person is engaged in servicing. MCL 324.11708(3).

Notwithstanding the requirement that a servicer dispose of septage at a receiving facility when such a facility is available, the Legislature elected to soften the hardship occasioned by this statute for servicers who had invested in land application before a receiving facility became readily available:

If a person engaged in servicing owns a storage facility with a capacity of 50,000 gallons or more and the storage facility was constructed, or authorized by the [Department of Environmental Quality] to be constructed, before the location where the person is engaged in servicing was included in a receiving facility service area under an operating plan approved under [MCL 324.11715b], [MCL 374.11708(3)] does not apply to that person before the 2025 state fiscal year. [MCL 324.11708(4).]

Examining Part 117 as a whole, it is clear that the Legislature intended to enact a comprehensive statutory scheme for the regulation of septage servicers and septage disposal with the goal of limiting land application as a method for disposing of septage in favor of treatment at a receiving facility.

With the enactment of the septage ordinance the township also entered the field of regulating septage servicers and septage disposal. The township banned the use of land application to dispose of septic waste, except for an owner of real property "who services his or her own septic tank . . . ." The township also designated the Grand Traverse facility as the receiving facility "for deposit and treatment of all septage and holding tank waste collected within the Township." The township required all septage haulers "collecting septage or holding tank waste within the Township [to] transport that waste to the [Grand Traverse facility] and pay the treatment charges therefor in accordance with the rules and regulations of the [Grand Traverse facility]." *Id.*

These septage ordinance provisions directly conflict with the Legislature's statutory scheme in several respects. See *Llewellyn*, 401 Mich at 322 n 4 ("A direct conflict exists . . . when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits."). The septage ordinance bans the commercial disposal of septage through land applica-

tion in the township, even though the statutory scheme permits land application through 2025 for persons who owned a 50,000 gallon storage facility before the availability of a receiving facility, MCL 324.11708(4). Further, the septage ordinance requires all septage servicers to haul septage taken from within the township to the Grand Traverse facility, even though the statutory scheme allows a servicer, who otherwise does not qualify under the exception stated under MCL 324.11708(4), to dispose of his or her septage at any facility within whose service area the person is engaged in servicing, MCL 324.11708(3). As such, courts would typically infer that the Legislature had intended to preempt the township's septage ordinance. *Llewellyn*, 401 Mich at 322. However, this is not a typical case.

Although the Legislature enacted a comprehensive and statewide scheme for the regulation of septage servicers and the disposal of septage, it also specifically limited the preemptive effect of its statutory scheme. The Legislature provided that Part 117 does "*not preempt* an ordinance of a governmental unit that prohibits the application of septage waste to land within that governmental unit or otherwise imposes *stricter* requirements than this part." MCL 324.11715(1) (emphasis added). Thus, the Legislature expressed a clear policy choice on the question of preemption: if a local government adopts an ordinance that conflicts with the Legislature's statutory scheme, that ordinance will not be preempted if it is a qualified ban on land application or if it imposes stricter requirements on septage disposal than that stated under the statutory scheme.

In its brief on appeal, the association explains at length how the township's septage ordinance directly conflicts with Part 117, how Part 117 represents a comprehensive statutory scheme for the regulation of

septage that completely occupies the field of regulation, and explains how Part 117 fills the need for a uniform, statewide regulation governing septage disposal. It engages in the analysis of these areas to demonstrate that the Legislature intended to preempt the local regulation of septage disposal. And we agree that these are tools that courts commonly use to determine whether and to what extent the Legislature intended to preempt local regulation through its statutory scheme.[3] See *Llewellyn*, 401 Mich at 322-324. But this Court is not at liberty to infer that the Legislature intended to preempt local regulation in direct contravention of the Legislature's express provision to the contrary. Rather, when the Legislature unambiguously states its intent to permit local regulations within certain parameters, we must enforce that intent. *Johnson v Recca*, 492 Mich 169, 175; 821 NW2d 520 (2012).

Under the Legislature's statutory scheme, the township could lawfully ban the use of land application for the disposal of septage within its boundaries, even though the Legislature provided a limited exception for servicers who own a qualifying storage facility. See MCL 324.11715(1); MCL 324.11715(2). Similarly, the township could lawfully impose stricter requirements on the method for the disposal of septage. The Legislature provided that a servicer must dispose of septage waste at a treatment facility if the servicer engages in servicing within the service area of a receiving facility—that is, the servicer's duty to dispose of septage at a facility is triggered by the existence of a nearby receiving facility. MCL 324.11708(3). The Legislature further provided that a servicer must satisfy its duty to dispose

---

[3] We note that preemption and conflict are distinct doctrines upon which an ordinance may be found to be invalid. *Detroit v Recorder's Court Judge*, 104 Mich App 214, 231; 304 NW2d 829 (1981).

of septage at a receiving facility by taking the septage to the facility that triggered the duty or by taking it to another facility within whose service area the servicer engages in the provision of septic services. *Id.* In contrast, under the township's ordinance, the servicer's duty to dispose of septage at a receiving facility is triggered whenever the servicer takes septage from *any* location within the township. And, under the township's ordinance, the servicer can only satisfy its duty by hauling the septage to a specific receiving facility: the Grand Traverse facility. *Id.* These limitations on the disposal of septage do not permit a servicer to avoid disposing of septage at a receiving facility when the servicer would otherwise be required to do so by MCL 324.11708(3). Stated another way, the septage ordinance does not lessen the duty imposed by the state regulatory scheme. Instead, the septage ordinance requires servicers to *always* use a receiving facility and to use the *specific* receiving facility designated by the township. These requirements are plainly more strict than those imposed by the Legislature in Part 117—the requirements have a more strict trigger for the duty to use a receiving facility and a more strict method for complying with that duty. Consequently, these requirements are not preempted by Part 117. See MCL 324.11715(1).

### III. CONCLUSION

Although the Legislature can expressly or impliedly preempt local regulations through a regulatory scheme, in this case, the Legislature declined to exercise that power. Instead, the Legislature determined that local governments should have the authority to regulate septage disposal to the extent that the local government's ordinances provide more strict requirements

than that provided in Part 117. Because the septage ordinance in this case imposes stricter requirements on the disposal of septage taken from within the township, it is not preempted by Part 117. Therefore, the trial court did not err when it determined that Part 117 did not preempt the township's ordinance governing the disposal of septage taken from within its borders and did not err when it granted summary disposition in defendants' favor on the association's preemption claim.

Affirmed. As the prevailing parties, defendants may tax their costs. MCR 7.219(A).

FITZGERALD, P.J., and METER and M. J. KELLY, JJ., concurred.